PRE-DECISIONAL/DELIBERATIVE

**Federal Emergency Management Agency**
**Washington, DC 20472**



September 26, 2025

TO:   David E. Richardson
      Senior Official Performing the Duties of Administrator

FROM:   Mike Kangior
      Senior Advisor

SUBJECT:  Puerto Rico Investigation on Whistleblower Retaliation and Discrimination

---

**Purpose**: To provide findings of fact relating to malfeasance during recovery in Puerto Rico by FEMA staff and a prime contractor.

**Background:** Hurricane Maria devastated Puerto Rico in September 2017, causing 2,975 recorded deaths and approximately $90 billion in damages. Among FEMA's recovery initiatives was a Lean Six Sigma program intended to improve operational efficiency. ATCS was awarded the prime contract and subcontracted portions of the work to NoMuda. During the period of performance (May 2018–June 2019), a major change was imposed on the statement of work without a corresponding contract modification. According to NoMuda's documentation, this resulted in violations of the Anti-Deficiency Act as well as discriminatory actions directed against its team members in Puerto Rico.

**Recommendation:** Approve the set of recommendations in Annex A, Annex B, and Annex D.

Annex A:  Pushkarewicz Termination Report
Annex B:  Aldarondo Termination Report
Annex C:  Discrimination and Retaliation Report
Annex D:  Contractor Debarment
Annex E:  Contractor Debarment Supporting Information

PRE-DECISIONAL/DELIBERATIVE
## ANNEX A: PERSONNEL TERMINATION REPORT

### I. BACKGROUND
Eli Pushkarewicz served as a Federal Emergency Management Agency (FEMA) Continuous Improvement Program (CIP) Manager during Hurricane Maria recovery operations in Puerto Rico from May 2018 through November 2018 under prime contractor ATCS (Contract HSFE80-16-A-0004, Task Order 70FB8018F00000070). In this role, he oversaw a $7 million Lean Six Sigma (LSS) process improvement program staffed by seven senior consultants tasked with disaster recovery optimization.

Pushkarewicz, a transgender male of Native American descent approximately 35 years of age, supervised a team composed entirely of cisgender, straight, white males over age 50—including three combat veterans with more than 150 years of combined military and corporate experience. He demonstrated open disdain for President Trump and engaged in reverse discriminatory behavior toward NoMuda, as detailed below.

### II. FINDINGS OF FACT
According to materials provided in Annex C and firsthand witness accounts, Pushkarewicz engaged in discriminatory practices, Anti-Deficiency Act violations, and derogatory statements against President Trump.

### A. Personnel Issues
There is a pattern of reverse discrimination and DEI abuses that follow Pushkarewicz. According to documents provided by NoMuda and firsthand accounts, he did not put FEMA's mission first.

#### 1. Social Media Evidence of Anti-White Male Bias
Extensive documentation from Pushkarewicz's public Facebook profile demonstrates a pattern of hostility toward individuals sharing the demographic characteristics of his subordinates:
- Posted derogatory statements about President Trump.

- Posted content expressing animosity toward "cis-gendered" males regardless of sexual orientation.

- Shared memes and articles displaying bias against white males specifically.

- Posted anti-military content targeting veterans.

- Shared content promoting reverse discrimination policies.

- Demonstrated age bias through posts mocking older generations.

- Posted content expressing hostility toward affluent white individuals.

#### 2. Discriminatory Management Actions
Contemporaneous team member documentation demonstrates systematic hostile conduct toward LSS team members based on their demographic characteristics:
- Repeatedly referred to LSS team members as "the old guys," "that washed up team of old guys," and "straight old white guys" - derogatory remarks that accurately described the team's demographic composition and were typically made behind their backs.

- Created hostile work environment through excessive oversight and micromanagement not applied to other demographic groups.

- Created a toxic environment where CIP members and other FEMA employees were not encouraged to work collaboratively with LSS.

- Directed subordinates Dawn Dickerson and Joanne Lucas to conduct systematic surveillance of LSS team members, documenting minor infractions with intent to undermine their efforts. This included unauthorized photography in the Joint Recovery Office, which constituted a security violation.

#### 3. Professional Misconduct

PRE-DECISIONAL/DELIBERATIVE

- Failed to provide necessary resources such as software and FEMA computers to LSS team while ensuring CIP team had pre-loaded software and full access to required resources.

- Blocked communication between LSS team and FCO despite open-door policy.

- Sabotaged critical Digital Site Inspection (DSI) Tool development in collaboration with Public Assistance employee Irene Pan, deliberately delaying testing from August 2018 to April 2019. This sabotage left the completed tool unused on the shelf despite its potential to save FEMA over 500,000 man-hours. Pan was noted as "a close friend of Pushkarewicz and a member of the LGBTQ community." When site inspectors and sector leads discovered the tool in February/March 2019, they recognized its value and began piloting it, but the tool was ultimately lost during the June 2019 system purge following retaliation against the LSS team.

- Earned nickname "The Destroyer" among FEMA staff for pattern of undermining programs while positioning himself to take credit if they succeeded - a practice described as "playing both sides against the middle."

- Created such a notoriously toxic work environment that the Alternative Dispute Resolution group, which typically only mediates disputes among government employees, proactively approached the LSS team to offer assistance with contractor relations - an unprecedented offer of services outside their normal scope.

**4. Statement of Work Violations and Contract Sabotage**
- Deliberately ignored and blocked Statement of Work (SOW) compliance efforts for almost a year, forcing the team to work at risk despite numerous protests to both FEMA and ATCS.

- Instructed ATCS management not to mention SOW irregularities to FEMA after being briefed on Federal Acquisition Regulation violations in July 2018.

- Collaborated with Chief of Staff Ana Bonilla to more than double contract deliverables without proper SOW modification, creating Anti-Deficiency Act violations. For example, the original SOW called for the LSS team to streamline the process from site inspection to getting funds to the survivor. Without modifying the SOW, however, the task became one requiring stand-up of an LSS Program Office with mentoring, coaching, training, certification, and doing projects. None of this was contemplated in the original SOW.

**5. Corroborating Evidence**
These findings are substantiated by multiple independent sources:
- Reports from FEMA's Office of Professional Responsibility (Cases #20200564, #20200565, and #20200490).

- Department of Homeland Security (DHS) Office of Inspector General (OIG) complaints documenting Anti-Deficiency Act violations, discrimination, and program sabotage.

- Federal EEO discrimination cases Angeline v. Mayorkas (1:23-cv-00722) and Wykosky v. Mayorkas (1:23-cv-01228) that survived motions to dismiss and are proceeding through discovery.

- Civilian Board of Contract Appeals (CBCA) Case 7999 alleging $520,000 in appropriations violations related to his program management.

- Contemporaneous team member documentation.

- Medical documentation of stress-related hospitalizations (stroke, heart problems) of team members under his management.

PRE-DECISIONAL/DELIBERATIVE

**B. Financial Impact**

Pushkarewicz's discriminatory management and systematic program sabotage, in direct collaboration with successor Tamiris Aldarondo, contributed to wasted taxpayer funds, lack of significant realization of benefits, and prolonged disaster recovery. For instance, the DSI Tool was destroyed under their watch—a tool designed to speed payments to survivors and make FEMA's operations more efficient. The DSI Tool had been sabotaged during development by Pushkarewicz and Irene Pan from August 2018 to April 2019, leaving it unused and on the shelf. When site inspectors and sector leads discovered the tool in February/March 2019, they recognized its value and began piloting it with plans to scale deployment. However, the tool was ultimately lost during the June 2019 system purge following retaliation against the LSS team.

**C. Procedural Issues**

The materials provided by NoMuda suggest discriminatory hiring practices and making DEI the mission—rather than the mission being supporting state, local, tribal, and territorial partners during response and recovery.

### 1. Discriminatory Hiring Practices:

- Systematically excluded cisgender white males over 40 from CIP team composition.

- Selected unqualified personnel based on demographic characteristics rather than merit.

- Chose team leaders lacking relevant professional experience or academic credentials.

- Bypassed qualified older Hispanic female candidates (i.e., Evelyn Santiago, Sandra Gonzales, Brenda Dorta) with over twenty years of experience and proper credentials in favor of younger LGBTQ individuals.

- Demonstrated pattern of age discrimination by consistently selecting team members under thirty-five regardless of qualifications.

- Prioritized LGBTQ status over merit in personnel decisions, including collaboration with Irene Pan (also LGBTQ) in Digital Site Inspection tool sabotage efforts.

## III. RECOMMENDATIONS

Based on documented evidence of reverse discrimination, DEI program abuse, professional incompetence, and whistleblower retaliation, it is recommended that Pushkarewicz be terminated from federal employment.

This action aligns with President Trump's January 20, 2025, Executive Order titled "Ending Radical and Wasteful Government DEI Programs and Preferencing." The Executive Order terminates DEI programs and requires federal employment practices to reward individual initiative, skills, performance, and hard work.

PRE-DECISIONAL/DELIBERATIVE
**ANNEX B: PERSONNEL TERMINATION REPORT**

**I. BACKGROUND**

Tamiris Aldarondo served as a Federal Emergency Management Agency (FEMA) Continuous Improvement Program (CIP) Manager during Hurricane Maria recovery operations in Puerto Rico from early 2019 through June 2019 under prime contractor ATCS (Contract HSFE80-16-A-0004, Task Order 70FB8018F00000070). In this role, she managed a $7 million Lean Six Sigma (LSS) process improvement program staffed by seven senior consultants responsible for disaster recovery optimization.

Aldarondo, a Hispanic female in her early thirties, was demonstrably unqualified for this position. Her principal prior professional experience consisted of teaching English as a second language to Japanese kindergarten students. She advanced rapidly into the CIP Manager role largely because she matched the demographic preferences of her predecessor, Eli Pushkarewicz.

**II. FINDINGS OF FACT**

According to materials provided in Annex C and firsthand witness accounts, Aldarondo engaged in discriminatory practices and Anti-Deficiency Act violations.

**A. Personnel Issues**

There is a pattern of reverse discrimination and DEI abuses that follow Adarondo. According to documents provided by NoMuda and firsthand accounts, she did not put FEMA's mission first.

1. **Discriminatory Management Actions**

Contemporaneous notes and a memorandum for record by Mark Rozycki, an LSS team member, expressed bias and hostility toward the entire LSS team.

- Made derogatory remarks in Spanish behind the team's back about their demographic composition, confirmed in Office of Professional Responsibility reports.

- Christian Bernhard Gomez and Brenda Dorta independently reported that Aldarondo routinely made disparaging remarks behind the team's back in Spanish, typically mocking their age, race, and gender.

- Repeatedly referred to LSS staff as "the old white guys."

- Instituted a retaliatory practice of writing up LSS consultants for merely speaking to FEMA leadership. For instance, Mark Rozycki was written up for talking with the Chief of Staff asking for clarity on an assignment.

2. **Professional Misconduct**

- Failed to attend any Champions training sessions, Green Belt (GB) or Black Belt (BB) certification events, or program review milestones despite her oversight role.

- Missed almost half of the classroom instruction in her own BB training, including an entire week for law school midterm exams during critical statistics instruction.

- Conducted a secret survey in April 2019, directing staff not to disclose it to the LSS team, with intent to undermine their credibility despite overwhelmingly positive course evaluations. When confronted about the survey, she told her team the purpose was to show that "those old white guys will be surprised by how they are not well respected."

- Suppressed all favorable survey results from GB, BB, and Champions programs. These suppressed surveys were only obtained later through Freedom of Information Act requests, proving willful concealment.

2. **Corroborating Evidence**

PRE-DECISIONAL/DELIBERATIVE

These findings are substantiated by multiple independent sources:

- Reports from FEMA's Office of Professional Responsibility (Cases #20200564, #20200565, and #20200490).

- WPU/OPR reports documenting discriminatory remarks in Spanish and corroborating retaliation.

- Department of Homeland Security (DHS) Office of Inspector General (OIG) complaints documenting Anti-Deficiency Act violations, discrimination, and program sabotage.

- Federal EEO discrimination cases Angeline v. Mayorkas (1:23-cv-00722) and Wykosky v. Mayorkas (1:23-cv-01228) that survived motions to dismiss and are proceeding through discovery.

- Separate discrimination lawsuit by Sandra Gonzalez, FEMA staff fired by Aldarondo, which independently corroborates discriminatory malfeasance by Aldarondo.

- Civilian Board of Contract Appeals (CBCA) Case 7999 alleging $520,000 in appropriations violations related to program management Aldarondo oversaw.

## B. Financial Impact

Aldarondo's discriminatory management and systematic program sabotage, in direct collaboration with predecessor Ely Pushkarewicz, contributed to wasted taxpayer funds, lack of significant realization of benefits, and prolonged disaster recovery. For instance, the DSI Tool was destroyed under their watch—a tool designed to speed payments to survivors and make FEMA's operations more efficient.

## C. Procedural Issues

The materials provided by NoMuda suggest discriminatory hiring practices and making DEI the mission— rather than the mission being supporting state, local, tribal, and territorial partners during response and recovery.

### 1. Abdication of Critical Duties

- As CIP Manager and chief process architect, Aldarondo had direct responsibility for reforms central to stabilizing the Puerto Rico recovery. Instead, she abdicated this role and diverted resources toward lower-value assignments, focusing on law school and a low-stakes Hurricane Dorian report while ignoring core recovery reforms.

- Training records reveal Aldarondo's chronic absenteeism and email records document her law schoolwork during federal duty hours.

- Diverted FEMA resources to develop an After-Action Report on Hurricane Dorian, which never made landfall in Puerto Rico, instead of focusing on Maria recovery.

### 2. Whistleblower Retaliation

- Terminated the LSS program prematurely upon learning the LSS team had blown the whistle on her with respect to malfeasance and EEO violations.

- Backdated a "To Whom It May Concern" memorandum to create a false paper trail justifying program termination. Further, suppressed documentation of program success to justify retaliatory actions against the LSS team.

- Aldarondo's conduct here resulted in one of several DHS OIG complaints against her.

## III. RECOMMENDATIONS

Based on documented evidence of reverse discrimination, DEI program abuse, professional incompetence, and whistleblower retaliation, it is recommended that Aldarondo be terminated from federal employment.

PRE-DECISIONAL/DELIBERATIVE

This action aligns with President Trump's January 20, 2025, Executive Order titled "Ending Radical and Wasteful Government DEI Programs and Preferencing." The Executive Order terminates DEI programs and requires federal employment practices to reward individual initiative, skills, performance, and ha

PRE-DECISIONAL/DELIBERATIVE

PRE-DECISIONAL/DELIBERATIVE

## ANNEX D: CONTRACTOR DEBARMENT

## I. BACKGROUND

ATCS PLC served as the prime contractor during Hurricane Maria recovery under FEMA Contract HSFE80-16-A-0004, Task Order (TO) 70FB8018F00000070. ATCS supported recovery operations in Puerto Rico from April 2018 through June 2019, managing a $7 million Lean Six Sigma (LSS) process improvement program staffed by seven senior consultants providing disaster recovery optimization services.

Despite being "fundamentally unqualified" for this assignment—with the DHS Office of Inspector General (OIG) confirming ATCS "had no LSS experience" and "no intellectual property developed"—ATCS exploited a blanket purchase agreement for maximum profit while providing minimal oversight or capability development.

ATCS PLC's systematic exploitation of Hurricane Maria recovery operations represents a costly contractor fraud case, with evidence pointing to more than $180 million in losses through fraudulent billing, negligent destruction of the Digital Site Inspection (DSI) Tool, and substantial lost opportunity costs.

Barry Angeline's firm, NoMuda, served as a third-level subcontractor to ATCS on LSS-related work in Puerto Rico. NoMuda alleges wrongdoing by ATCS as highlighted below and further detailed throughout this annex.

**Statistical Retaliation Validation**: ATCS accounts for 40% of all substantiated DHS whistleblower retaliation findings nationwide, two of five cases from 4,127 complaints filed FY2019-2024.

- **Federal Validation Convergence**: Six concurrent federal proceedings validate ATCS's misconduct, including substantiated DHS OIG retaliation findings, active federal court cases, and Civilian Board of Contract Appeals (CBCA) proceedings confirming Anti-Deficiency Act violations totaling $520,000.

## II. FINDINGS OF FACT

According to NoMuda, ATCS engaged in eight areas of misconduct. The activities ranged from Anti-Deficiency Act violations to fraud and even retaliation as laid out below.

### 1. Billing Irregularities and Pass-Through Violations

ATCS engineered an eight-company subcontracting pyramid scheme, consuming up to 75% of federal payments through excessive pass-through layers. This structure resulted in 10 out of 17 people devoted to the project making the maximum hourly rate with little to no experience. Further, analysis suggest that ATCS was engaged in double-billing and personnel billing on the contract who were not actually working.

PRE-DECISIONAL/DELIBERATIVE

## 2. Anti-Deficiency Act Violations and Unauthorized Scope Expansion

CBCA Case 7999 alleges $520,000 in appropriations violations. ATCS directed contractors to perform unauthorized work "at risk" while falsely claiming SOW modifications. DHS OIG substantiated that "thirty to forty percent of work performed fell outside the scope" while ATCS "told them repeatedly not to bring up SOW noncompliance."

## 3. Intellectual Property Theft and Deliverable Fraud

Systematic IP misappropriation campaign from May 16-22, 2019, demanding proprietary training materials beyond contract scope. ATCS filed fraudulent REA omitting eleven of fourteen delivered modules to conceal unauthorized work valued at over $520,000.

## 4. Whistleblower Retaliation and Contractor Abuse

On May 17, 2019, Tamiris Aldarondo from FEMA was informed of whistleblower disclosures by NoMuda. Shortly following, NoMudo alleged retaliation and the DHS OIG confirmed the retaliation. Because of this, ATCS accounts for two of five substantiated DHS OIG retaliation cases nationwide from FY2019-2024. This represents 40% of all confirmed DHS retaliation findings.

## 5. Spoliation of Records and Discovery Misconduct

NoMuda helped create the DSI Tool, which digitized site inspections for recovery purposes. It would have made the process more efficient. ATCS negligently lost the working DSI Tool during post-retaliation file purge operations, erasing over $70 million in projected productivity value and eliminating over 500,000 man-hours in projected savings. ATCS systematically manipulated call-down lists, deleted evidence of unauthorized work, and refused to produce basic financial documentation during active federal litigation.

## 6. Collusion and Institutional Sabotage

ATCS actively colluded with FEMA officials Eli Pushkarewicz and Tamiris Aldarondo to dismantle the LSS program and execute retaliation against whistleblowers. ATCS embedded unqualified operative Victoria Colmenero to "placate and sanitize" discriminatory FEMA officials while reporting team activities to corporate management for retaliation planning.

## 7. Prompt Payment Act Violations and Financial Coercion

ATCS systematically withheld payments from subcontractors for up to eight months, using contractor funds for corporate cash flow management. This forced personal loans and created over $40,000 in personal credit card debt for disaster recovery personnel.

## 8. Negligent Hiring, Delegation of Inherently Governmental Functions, and Oversight Failures

PRE-DECISIONAL/DELIBERATIVE

ATCS attempted to onboard Steven Bonacorsi, a registered sex offender with multiple felony convictions, demonstrating complete absence of vetting procedures. The company systematically hired unqualified personnel based on demographic characteristics rather than merit, creating a workforce where 59% lacked required credentials. ATCS directed contractors to perform inherently governmental functions including writing contract requirements and evaluating federal employees, violating FAR 7.503.

## III. RECOMMENDATIONS

The points above are further detailed in Annex E. According to the documents provided by NoMuda, ATCS has engaged in systematic exploitation of Hurricane Maria disaster recovery operations, coordinated retaliation against whistleblowers, and the negligent destruction of critical taxpayer-funded capabilities. In light of this, two recommendations are provided:

1. **FEMA should consider immediate debarment of ATCS from its qualified list of contractors.**

2. **DOJ criminal referral** for Anti-Deficiency Act violations (31 U.S.C. § 1341), False Claims Act violations (31 U.S.C. § 3729), records falsification (18 U.S.C. § 1519), and whistleblower retaliation (41 U.S.C. § 4712).